UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KEITH BROWNING, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 11-2436 |
| v. | : | MEMORANDUM OPINION |
| SAFMARINE, INC., SAFMARINE CONTAINER LINES N.V., MAERSK LINE, A.P. MOLLER-MAERSK A/S, and A.P. MOLLER-MAERSK GROUP, | : | & ORDER |
| Defendants. | : | |

This matter is before the Court on a motion for summary judgment filed by Defendants Safmarine, Inc., Safmarine Container Lines N.V., Maersk Line, A.P. Moller-Maersk A/S, and A.P. Moller Maersk Group. After the motion was filed, Plaintiff was granted leave to amend the Complaint, naming Jaco Trader Shipping, Ltd. as a Defendant and removing Safmarine, Inc. from the case. Accordingly, the remaining moving Defendants are Safmarine Container Lines N.V., Maersk Line, A.P. Moller-Maersk A/S, and A.P. Moller Maersk Group. Oral argument on the motion was heard on November 5, 2012, and the record of that proceeding is incorporated here. For the reasons set forth below, and those discussed on the record during oral argument, the motion will be granted.

Background

Plaintiff Keith Browning filed the Complaint in this matter in the Superior Court of New Jersey, Law Division, Camden County on March 10, 2011 to recover for personal injuries he suffered while working as a longshoreman for his stevedore-employer, Delaware River Stevedores, Inc., on board the M/V Safmarine Douala on March 13, 2008. Jaco Trader Shipping, Ltd. was purportedly the owner of the M/V Safmarine

Douala at the time of Plaintiff's accident, and also employed the ship's crew. On the above date, Plaintiff was assisting in the discharge of a cargo of cocoa beans while the vessel was berthed at the Beckett Street Terminal in the port of Camden, New Jersey, when he fell, sustaining injuries. Defendants removed the matter to this Court on April 28, 2011, citing the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). Defendants, not including newly named Defendant Jaco Trader Shipping, Ltd. now move for summary judgment, arguing that there is no evidence that they breached any duty of care owed to the longshoremen working on the M/V Safmarine Douala on the day of Plaintiff's fall.

Specifically, through this motion, moving Defendants have argued that they had no involvement in the alleged incident that forms the basis of Plaintiff's suit. Apparently, on the evening of March 13, 2008, Plaintiff was sitting with fellow longshoremen on a pipe on the deck of the M/V Safmarine Douala, waiting for the vessel's crew to finish cleaning the dunnage out of the vessel's hold, when an unidentified member of the ship's crew kicked Plaintiff's feet out from underneath him, causing him to fall backward and sustain injuries. See Def. Motion Ex. C, DRS Supervisor's Accident Investigation Report; Ex. B, Pl. Dep., p. 60, 82-94.

Defendant Safmarine Container Lines N.V. has stated that it was merely the time charterer of the M/V Safmarine Douala, it did not employ the ship's crew and had no personnel on the ship on the day of the alleged incident. A.P. Moller-Maersk A/S is the ultimate parent corporation of Safmarine Container Lines N.V. Defendants Maersk Line and A.P. Moller-Maersk Group are allegedly merely trade names for A.P. Moller-Maersk A/S, not legal or business entities capable of suit.

2

Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986)); accord Fed. R. Civ. P. 56(a).  The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to

withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256–57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

Analysis

For approximately twenty-five years, ship owners were liable under federal common law for injuries suffered by longshoremen during the unloading of cargo. See Seas Shipping Co. v. Sieracki, 328 U.S. 85 (1946). In 1972, however, Congress passed the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. §§

901-950. The LHWCA eliminated the great majority of causes of action against ship owners by precluding injured longshoremen from suing on the basis of a ship's unseaworthiness. See 33 U.S.C. § 905(b). Instead, the LHWCA instituted a system of worker's compensation whereby an injured longshoreman would receive compensation and benefits from the federal government but would not be able to sue his employer, the ship's owner, or the owner's agents unless the owner or agent were actually negligent regarding the injured longshoreman. Id.[1] "[A] shipowner can, ordinarily, reasonably rely on the stevedore (and its longshore employees) to notice obvious hazards and to take steps consistent with its expertise to avoid those hazards where practical to do so. . . . [A] shipowner may be liable for failing to eliminate an eliminable hazard only if it should have expected that its expert stevedore would not avoid the hazard and conduct cargo operations safely." Kirsch v. Plovidba, 971 F.2d 1026, 1030 & 1033 (3d Cir. 1992).

---

[1]Technically, the LHWCA limits negligence actions against employers and "the vessel." See 33 U.S.C. § 905(b), which reads, "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter." The term "vessel" is defined to include the ship's owner and the owner's agents. See 33 U.S.C. § 902(21).

The LHWCA did not specify what acts or omissions would constitute negligence on the part of these actors.  Nevertheless, the jurisprudence has established several doctrines depending on the actor involved and the injury suffered by the claimant.  The United States Supreme Court, however, defined the post-LHWCA negligence of ship owners in the landmark case Scindia Steam Navigation, Ltd. v. De los Santos, 451 U.S. 156 (1981).  In Scindia, the Court held that there were three duties of care owed by a ship owner to longshoremen: (1) the "turnover duties," which include (a) the duty to ensure that the ship and its equipment are in reasonably safe condition and (b) the corollary "duty to warn" the stevedoring company if the ship or its equipment poses a latent threat to the longshoremen, id. at 166-67; and (2) the "active control duty," which imposes a duty of care on the owner *vis-a-vis* the areas of the ship that remain under the owner's active control during cargo operations, id. at 167 (holding that owner owes no duty in areas "within the confines of the cargo operations that are assigned to the stevedore").  There is also (3) a "duty to intervene," which requires the owner to alert the stevedore to any latent dangers of which the owner becomes aware after unloading has begun.  See id. at 167-68.

Plaintiff has not argued that any of the Scindia duties applied to the moving Defendants.  Rather, Plaintiff argues that the time charter agreement imposed a duty upon Safmarine Container Lines N.V.  A time charterer may be liable to a longshoreman only if the charterer was actually involved in the incident at issue or expressly and intentionally assumed actual control over the management and operation of the ship as a whole.  Irby v. Tokai Lines, 1990 AMC 1042, 1052 (E.D. Pa. 1990); Mullen v. Hoyu Kauin K.K., 1990 AMC 1751, 1756 (E.D. Pa.), aff'd 922 F.2d 832 (3d Cir. 1990).

As stated above, Defendant Safmarine Container Lines N.V. was merely the time charterer of the M/V Safmarine Douala pursuant to the terms and conditions of a time charter party dated March 10, 2006 and Addendum Nos. 1 through 3 dated October 24, 2006, January 29, 2007, and April 1, 2008. Van Craen Decl., ¶ 9-10 and Ex. A, Time Charter Party; Def. Motion, Ex. G, Van Craen Dep., p. 50-51. There is no evidence in the record that Safmarine Container Lines N.V. expressly assumed operational control of the M/V Safmarine Douala. Further, Safmarine Container Lines N.V. did not employ the ship's crew and had no personnel on the ship on the day of the alleged incident. Van Craen Decl., ¶ 11; Def. Motion, Ex. G, Van Craen Dep., p. 51. Rather, Jaco Trader Shipping, Ltd. owned the M/V Safmarine Douala at the time of Plaintiff's accident and employed the ship's crew. Van Craen Decl. ¶ 6-7 and Ex. A, Time Charter Party at ¶¶ 1, 26 and Addenda Nos. 1, 2, and 3; Ex. B, Tri-Party Agmt.; Def. Motion, Ex. G, Van Craen Dep., p. 24.

A.P. Moller-Maersk A/S is the ultimate parent corporation of Safmarine Container Lines N.V. O'Rourke Decl., ¶ 4; Def. Motion, Ex. L, O'Rourke Dep., p. 15. A.P. Moller-Maersk A/S was never an owner or charterer of the M/V Safmarine Douala. Perlman Decl., ¶¶ 3-4. Additionally, for the same reasons that Safmarine Container Lines N.V. is entitled to summary judgment, so is A.P. Moller-Maersk A/S – this entity did not employ the ship's crew and had nothing to do with the incident that caused Plaintiff's injury. Defendants Maersk Line and A.P. Moller-Maersk Group are merely trade names for A.P. Moller-Maersk A/S, not legal or business entities capable of suit. O'Rourke Decl., ¶ 5-6; Def. Motion, Ex. L, O'Rourke Dep., p. 21-22.

Accordingly, the record makes clear that Plaintiff is unable to establish a prima facie case against any of the moving Defendants and, as such, they are entitled to summary judgment. Indeed, clause 26 of the charter party provides, "Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the navigation of the vessel, acts of pilots, tug boats, lines men, insurance, crew, and all other matters as when trading for their own account." Van Craen Decl., Ex. A, Time Charter Party. Further, pursuant to clause 51, Jaco, as Owner, would be required to "indemnify Charterers for personal accidents or injuries sustained by any person on board or about the vessel, unless caused by the act, negligence, default of the charterers, their servants or agents." Id. "[I]t is well-settled admiralty law that absent an agreement to the contrary, the time charterer has no control over the vessel and assumes no liability for negligence of the crew." Duczkowski v. Hyundai Am. Shipping Agency, 2010 WL 5316134, *4 (D.N.J. Dec. 20, 2010).

## Conclusion

For these reasons, as well as those expressed on the record during oral argument, IT IS ORDERED on this 5th day of December, 2012 that the motion for summary judgment filed by Defendants Safmarine Container Lines N.V., Maersk Line, A.P. Moller-Maersk A/S, and A.P. Moller Maersk Group [20] is hereby GRANTED.

/s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.